DAVID CAMPBELL *v.* W. H. CRUTCHER and others.

October Term, 1876.

DECREE MAY BE MADE UPON EQUITIES RESERVED. — Where the decree in a cause, rendered upon the merits, does not sufficiently settle the rights of the parties, and the directions in the reference are, consequently, not definite enough, the court may, upon the equities reserved in the former decree, make the proper decree on the merits, not in conflict with the previous rulings, and the proper reference.

*J. D. Park*, for complainant.
*John A. Campbell*, for defendants.

THE CHANCELLOR : — This case comes before me upon a report of the master, and exceptions filed thereto ; and, upon examination, I find that the whole difficulty grows out of the fact that the decree upon the merits does not sufficiently settle the rights of the parties, and, consequently, that the directions in the order of reference are not definite enough.

The complainant, as a judgment-creditor of the defendant Crutcher, seeks to subject to the satisfaction of his debt the indebtedness of the defendant Chadwell to Crutcher, for

land in Dickson County. The bill does not undertake to state the terms of the contract between Crutcher and Chadwell, out of which the indebtedness of the latter grew, but calls upon them to discover these terms. Chadwell having refused to answer, the bill was taken for confessed, and a final decree rendered against him. This decree and the *pro confesso* order were afterwards set aside by consent, and Chadwell permitted to answer by a given time. No answer having been filed within the time prescribed, the bill was again taken for confessed against him, and prepared for hearing by taking the deposition of Crutcher and proving the terms of the contract. The contract showed a sale of a tract of land at $3.33 an acre, supposed to contain 1,800 acres; but with a provision that, if the tract contained more than that quantity of land, the purchaser, Chadwell, should pay $3.33 for each acre in excess, and if it contained less than that quantity he should be entitled to a deduction at the same rate for each acre of deficiency. The contract also expressly provided that Crutcher should make to Chadwell " a good and valid title " to the land *before* payment of the consideration. To this contract was appended a statement, signed by the parties, and dated only a few days thereafter, showing a settlement of part of the consideration, leaving a balance due, as of that date, of $1,467.85, with interest, but subject to the provision of the contract as to the increase or diminution in the number of acres.

In this situation of the case, at the October term, 1874, of this court, which was the trial term, Chadwell made an application to set aside the second *pro confesso* order, and to have leave to file an answer. Upon examining the answer proposed to be filed, and the affidavit made in support of the application, I was of opinion that no sufficient excuse was given for the failure to file an answer within the time previously fixed by agreement; and, moreover, that the answer disclosed no " meritorious defence " of which the

defendant would not have the benefit without it under the
*pro confesso.* The answer admitted the contract and set-
tlement as proved by the instruments of writing appended
to Crutcher's deposition, and the defendant's willingness to
pay the purchase-money, but insisted that there was a con-
troversy as to the validity of the title of part of the land,
and that he probably owed Crutcher nothing when the
quantity of land was ascertained to which the latter could
make a good title. Under the answer, the only question
would have been the quantity of land to which the defend-
ant Crutcher could make a valid title. Under the *pro con-
fesso* order, the complainant could clearly subject only so
much of the agreed purchase-money as would be found to
be due for land to which a good title could be made. Ob-
viously, while the permission to file an answer might be a
ground for further delay, it would do the defendant no ser-
vice. I therefore refused the application.

The order overruling the motion gives, as I now find, a
wrong reason for my action. It puts the decision on the
ground that the answer disclosed no " meritorious defence ;"
a clear error, for it did disclose a " meritorious defence,"
the failure of title to part of the land, — but a defence which
the defendant was manifestly entitled to make under the
*pro confesso.* Whether my attention was attracted to this
error at the time, I do not now remember. But if it was,
I probably thought that a wrong reason would not invalidate
a correct ruling. But this mistake of the draughtsman in the
preliminary order led him to make a graver error in the
final decree. If the court held that there was no " merit-
orious defence " in the answer, which set up the failure of
title, then such a defence would not be meritorious under
the *pro confesso.* Reasoning in this way, the learned
counsel, in drawing up his final decree on the *pro confesso,*
after properly reciting the complainant's judgment, and that
the complainant was entitled to subject to its satisfaction
the indebtedness of Chadwell, further recited that such in-
debtedness exceeded the amount of the complainant's judg-

ment, thereby deciding that there was no failure of title, or rather that the question of a failure of title to any part of the land was not in issue under the *pro confesso*. But this was a palpable mistake, the terms of the contract showing that Crutcher was bound to make a " good and valid " title before the purchase-money was to be paid, and the bill making no averment as to title to be admitted by the *pro confesso*. Accordingly, I called the attention of the counsel to this error, explaining again the ruling of the court, and the erroneous recital was stricken out. The decree had been drawn up, however, on the other hypothesis; and, in this view, contained only a reference to the master to ascertain the indebtedness of Chadwell and report *instanter*, the duty of the clerk being merely a calculation of interest. After the correction of the decree, the clerk could not make a report of Chadwell's indebtedness without ascertaining the quantity of land included in the tract conveyed, and whether there was any defect in Crutcher's title as to any part of it; and the decree ought to have been altered so as expressly to adjudge that the indebtedness of Chadwell, which the complainant was entitled to subject to the satisfaction of his judgment, would be the sum of $1,467.85, with interest from October 10, 1867, as shown by the contract of sale and agreement between the parties, of the latter date, subject to such increase or diminution, as the case might be, at the rate of $3.33 per acre, as the quantity of land within the description of the contract might exceed or fall short of the 1,800 acres to which Crutcher had bound himself to make a " good and valid " title before the payment of the purchase-money. And the reference to the master should have been to report upon the validity of the title, and the quantity of land within the contract to which a good and valid title could be made, and the balance of purchase-money due upon the facts as found. The decree as entered simply directs the master to report the sum due, without giving him any instructions as to how he is to arrive at it.

The master has allowed evidence to be taken to show the

quantity of land embraced in the contract, which, upon survey, turns out to be more than 1,800 acres. He has, doubtless with the consent of complainant and Crutcher, deducted from the amount found by survey ninety-six acres, as to which he says there is a conflicting entry, the validity or invalidity of which he does not pass upon. He reports a balance due, after this deduction, in excess of complainant's judgment. But he does not pass upon the title, although testimony has been taken and filed, by the complainant, tending to show a valid title. But it is obvious from what has been said that Chadwell is only bound to pay for land to which he gets a good and valid title. Until it is adjudged that he has accepted a title, which would be an admission that Crutcher had complied with his part of the contract, or that Crutcher's title is good and valid to the land, no decree can go against Chadwell for the money. The report is, therefore, insufficient to authorize a decree against Chadwell, and he may well say, as he does by his exceptions, that the master was not empowered, by the reference, to take proof upon the subject of title.

I see no way out of the difficulty except to fall back upon the equity reserved by the decree of the October term, 1874, and do what we ought to have done then, — make the proper decree upon the merits, not in conflict with the previous rulings, and the proper reference. The report may be set aside, and a decree be now entered upon the evidence before the court at the October term, 1874, distinctly declaring the rights of all parties, and making the reference suggested, especially as to title. And, in connection with the matter of title, the master may hear proof, and report whether the defendant Chadwell has accepted any, and what, title to the land, and under what circumstances. I add this reference, because among the papers there is filed a copy of a deed made to Chadwell by the clerk of the Chancery Court of Dickson County to these lands, purporting to be under a decree in the case, in which the lands were sold

to Crutcher. It may be that the acceptance of this deed is an admission of the validity of the title. To save costs, the evidence taken and filed by either side may be used on the new reference, but with leave to either party to lay before the master such other evidence as he may be advised. And, inasmuch as this case has been in court since 1868, I will give the parties one month in which to make their proof under this reference, except upon good cause shown for an extension of time; and the master will give notice, and make his report within ten days of the expiration of the month here given.